Our third case for today is Chronis v. United States, I'll give you a minute to get settled. Mr. Andrews. Good morning, may it please the Court. Travis Andrews of Gibson Don as court appointed amicus in support of appellate Anna Chronis. The only disputed issue before the court this morning is whether Ms. Chronis satisfied the FTCA's claim presentment requirement when she submitted a November 7, 2015 complaint to CMS. When construed generously as this court must, given her status as a pro se litigant, her complaint clearly satisfies this court's standard under Conn v. the United States because it Thus, a legally sophisticated reader would have discerned an administrative claim, and the court should deem the claim exhausted. The government does not dispute that if Ms. Chronis is found to have On how much a complainant like Ms. Chronis must allege in her letter to a Federal agency as opposed to the attachments. Suppose, for example, her letter had simply said, I want CMS to make sure Dr. Alexander never, ever works again. And she attached all of the documents that she attached here. Would that constitute a claim for purposes of the Federal Tort Claims Act? Judge Ropener, if Ms. Chronis had submitted a letter with the facts and had alleged, as she did here, a malpractice in addition to the language you just quoted and included the attachments, we would point the court to Pelle versus the United States, in which the court analyzed whether the claimant there, Mr. Pelle, had satisfied the claim presentment requirement. And in that case, the court focused its discussion on a letter that his counsel had submitted to the correctional facility where he was being held and not to the Bureau of Prisons, which was the appropriate Federal agency in that case. And in Pelle, the court focused much of its discussion on the attachment and not the standard Form 95 itself in that case. So we would argue, assuming that there were still facts that would give rise to some notice of a claim, in addition to the attachments with several demands for money, that Ms. Chronis would have satisfied the claim presentment requirement, even under slightly less or more ambiguous language. The government, again, does not dispute that Ms. Chronis is bound to have submitted a proper administrative complaint. She was entitled to treat the claims denied because more than six months passed after she submitted the claim to the agency. Your Honors, I would remind the court to keep in mind that Ms. Chronis was not obliged to plead legal theories in the complaint. She actually went above that standard and alleged multiple times that she had been the victim of malpractice at this federally funded health center. She in the letter itself, on the face of the cover letter, said she was wounded, had to pay for out-of-pocket follow-up care that resulted from the malpractice and gross negligence of the health center. I think that's your best fact. The fact that she uses the words gross negligence and malpractice. I think the hard thing is, it's a lot of attachments, was it 65 pages, something like that? The letter, if I'm reading it, if a client walks into my office and I'm a lawyer and she tells me all of this, then I say, oh, you might have a malpractice claim against the doctor that performed this exam. But everywhere else in this letter, it reads like she's asking for assistance. She spends a lot of time talking about how the doctor didn't respond and she had to be a sleuth to find out his address so that she could send a letter. Our case law says you don't have to demand a some certain, but it seems to me that if you don't demand a some certain, the point of that is not only to put the United States on notice of how much money is at stake for purposes of settlement, the purpose of it is also it makes it clearer that you're actually demanding money and prosecuting a claim. I think that the fact that the majority of this letter reads more like a professional regulation complaint makes it more complicated that the demand for some certain isn't there. Sure, Your Honor. I would point the court to the language on the face of the cover letter wherein Ms. Cronus did request for assistance in receiving restitution that she believed was owed to her. And that language alone distinguishes this case from two others that the court has decided against the claimant. One was in Kahn versus the United States in which the court held that Ms. Kahn's initial letter to the marshal service was very similar to what you indicated, Judge Barrett, was just perhaps a request for an apology. There was no indication that she would seek money damages at all in the initial letter to the marshal service describing this incident with the marshal service and failure to observe her religious practices. The other case is Smoke Shop and the court in that case held that the Rule 41G motion that Smoke Shop had submitted to the government for a request for return of property had no mention of money damages at all, that the property was valued at a certain amount, but that the motion itself had no indication that the claimant was seeking money. And here in this case, again, the letter itself overall may read as a grievance, but the fact that she included in just the cover letter on the first page that she was seeking restitution should have been enough under this court's precedent to satisfy the facts plus a demand for money standard. And I would point the court as well to the language in Kahn, which is just that failure to specify a sum certain is not fatal because it's unlikely to derail the settlement process. And so here where Ms. Cronus had submitted, like I said, both a specific demand for restitution and then in all the attachments several requests for reimbursement that were directly related to her alleged malpractice or the doctor's alleged malpractice gets past the hurdle. If she didn't have the demand for restitution language. I'm just trying to think like then, so if this is enough, is there anything that's not enough? If she didn't have this language saying I want assistance in receiving the restitution, do you think the letter would have been sufficient? With the attachments, as your Honor pointed out, there were maybe as many as 60 pages, which is not negligible amount of attachments, but the onus is on the government with the pro se plaintiff to see, to put elements of the claim together. So with the attachments and the demands for money in the attachments, and they were very clear, they weren't hidden demands for money, read collectively, we believe that the claim is both the letter and the attachments. If none of the attachments and the letter had not included any language about money, restitution, reimbursement, compensation, we would agree with your Honor that she would not have satisfied the requirement. Now is the position that CMS had an obligation to tell Ms. Cronus that she was going to be instructing Ms. Cronus how to file a satisfactory federal administrative claim? We, your Honor, no. We do not argue that CMS was under an obligation to instruct her how to file a claim. They were under governing regulations required to pass an administrative claim along to the appropriate person's desk, which would have been still within the Department of Health and Human Services, but I guess it sounds like a slightly different agency within the HHS. With that, I'd like to reserve the remainder of my time. Mr. Heffron? May it please the Court, Counsel? The District Court correctly dismissed this case because Ms. Cronus did not exhaust her administrative remedies because she did not submit an administrative court tort claim to a federal agency. I carefully looked through all of Ms. Cronus' exhibits and correspondence. She wrote exhaustively and perhaps exhaustingly to everyone she could think of, supervisors, hospitals, regulators, agencies, following up on complaints, outlining all of the facts, attaching relevant documents where necessary. Unfortunately, however, she was prosaic, totally unrepresentative and not given good advice about filing a federal administrative claim. Now, if her attempts are not sufficient, is there a pro se litigant in the world who could find her way through the appropriate hoops, except maybe by happenstance, and exhaust an administrative claim, do you think? Yes, Your Honor. It's a little bit outside the record, but I'm happy to answer the question. Typically when this occurs, we dismiss the filed complaint. We then instruct the plaintiff to submit a Form SF-95 or another administrative claim, which is what the United States did in this case. So she didn't follow up on that and file the resubmitted form? She did actually file an administrative claim in the fall of 2017, I think even before Judge St. Eve dismissed the case. So, Your Honor, that is the typical process of what occurs. But, you see, what does it mean to construe pro se administrative complaints generously if it doesn't apply to her, I mean, really, vociferous, adamant, very thorough complaints, seems to me. That would more address the legal theories that would need to be construed generously and the fact that any facts which would arrive to any legal theories would be included as have been exhausted. In this case, and in this claim, she missed two requirements, as specified in the regulations and the applicable statutes. She did not demand anything from CMS. She said, I look forward to your guidance on how to proceed. She actually said, I look forward to your guidance on how to proceed. Wouldn't that have obligated CMS to tell her, look, if you want to preserve a federal claim, this is what you should do? What it did was they sent her back to the state agencies to complain. I would have imagined that it, you know, might have told her how to file a satisfactory federal administrative claim. Your Honor, this letter did not lend itself to being read as an administrative claim. And that, I would imagine, is why she was not instructed how to file an administrative claim or a proper claim. This letter is correctly read as a request to exercise professional oversight and rectify UI Health's perceived alleged systemic failures, help her recover funds from UI Health, not from CMS or an agency, and to help her find a new... I'm sorry. There's a delay. Oh, I apologize, Your Honor. No, no, I apologize. And, indeed, help her find her new health care, a new health care provider. Indeed, the letter begins with, today I write to ask your assistance in resolving a frustrating process of delay, unfulfilled promises, and documented willful ignorance of policy and procedures. And then the conclusion statement that you read earlier, both those phrasings, paired with all of the other allegations in the letter, could not alert to CMS that she was alleging a claim against it or any federal agency. She never stated, I want money from you, and that is fatal to this case. Just like in Glade, where the plaintiff described a tort in excruciating detail, but never sought to hold the United States accountable. And just like in Kahn, where the first letter gave the impression that the plaintiff was seeking something other than money. But let me ask you this. So one agency, if a would-be plaintiff sends this kind of a demand to the wrong agency, then that agency, that federal agency, would have to transfer it to the right agency. Yes. Right. So here, she did demand money from Illinois, and then that wasn't the right entity. However, there needed to be a responsibility because of the federal funds, right? In the end, yes. So would, kind of on that same principle, that seeking money from the wrong federal agency doesn't doom you, because the government has to figure out which is the right agency, would that same principle apply here, so that demanding money from the state, when the federal government really should be on the hook, is effectively a demand to the federal government? No, Your Honor, because anyone reading this letter would say she is demanding money from the state. She is not indicating she is adverse to the United States as a whole at all. And I don't think anyone reading that letter could assume UI Health, that must be us. Someone else in the government is holding the bag. But it was, right? Because UI Health sent the stuff to you because they received federal funds, so it really would have been you on the hook. So if that's the case, Your Honor, then any federal employee would have to know every federally funded clinic in the United States. It's much simpler to hold the plaintiff accountable to know whether one clinic receives federal funds versus every federal employee and every federal employee. In this case, it makes more sense for them to be, and combined with the other allegations as well, it's clear she is asking for their help in resolving a process. She has four requests in the letter to CMS, to correct the factual record, to correct the problem and mishandling of her case, to receive the restitution, which is the only reference in the letter to any money, and to direct her to appropriate medical care. Opposing counsel takes great pains to downplay the requirement of a some certain. However, the language he relies on is dicta in the case he cited, and it's dicta from the two cases that case relies upon. The three cases that address the some certain requirement are Kahn in 2015, and the issue before the court was whether or not the claim was timely. Kahn relies on Kanar and Murray. Kanar was in 1997, where the issue before the court was whether the attorney's authority to represent the plaintiff had been demonstrated. But she alleged a specific dollar claim by attaching her correspondence, in which she claimed that she was out of pocket $332. By attaching that, it became part of her claim. And I was wondering why you, you know, why the government thinks that her claim for reimbursement for her doctor's visit was not a claim for personal injury. As you stated in your brief on page 7, because she's saying that she was injured by Dr. Alexander. Had to go to a second doctor, pay out of pocket to rectify that injury. That's what a claim for personal injury is. So the letter to UI Health requests three things. It requests written follow-up of telephone conversations with UI Health so she can paper her file. $332, as you referenced. But then in the letter, it also references pain and suffering earlier, but she does not assign a value to it. There is no indication of what amount she would accept to resolve a personal injury complaint. $332 seems to me. Your Honor, if that were the case, that would also be the maximum she could recover in any subsequent civil case. In reading the letter as a whole, it clearly indicates that she wants more above and beyond $332. But she does not assign a dollar value to it. Was that a concession that she actually was demanding money from the government? No, no. She's demanding $332 and then above and beyond that for pain and suffering? No, Your Honor. She was demanding that from UI Health. This was in 7 of 8 attachments in the back. And this was incorporated, although in the cover letter, it was demand to UI Health and not to CMS or a federal agency. Additionally, the sum certain is not a complex legal jargon. Every other circuit court that has addressed this question recognizes it as a simple, unambiguous meaning of a definite dollar amount. Your Honor, as I see my time has expired, and I would ask that this court's decision be affirmed. Thank you, Counsel. Mr. Andrews, rebuttal? Your Honor, first, a claimant who is submitting a claim to a federal agency has the choice between a standard form 95 and written notification under the regulations. Also, Judge Robner, to get to your point, CMS actually at some point did acknowledge that she was requesting money damages. This is in the record attachment to plaintiff's opposition in the docket 10 at 7, where Mr. Friedrich at CMS actually confirmed that CMS knew she had alleged an injury as a result of provider negligence and that she was seeking out-of-pocket expenses that occurred as a result. And he suggested, actually, that she go to the state Medicaid agency instead of CMS. So CMS was on alert. This was in her initial submission in November 2015. Con, we would also argue, is an alternative holding. The court was asking whether her written notification early on satisfied the timeliness requirement. And so we would argue it's not just dicta, it's an alternative holding to the court's timeliness discussion. And I see my time has expired. Thank you. Mr. Andrews, thank you for your time. You may recess for 10 minutes. Thank you.